(No. 55230.—

*In re* THOMAS VINCENT CASSIDY, Attorney. Respondent.

*Opinion filed February 19, 1982.*

146

Philip Schickedanz, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

Heyl, Royster, Voelker & Allen, of Peoria (Lyle W. Allen, of counsel), for respondent.

JUSTICE SIMON delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a complaint against Thomas Vincent Cassidy, who has practiced law in Peoria County for 24 years, charging violations of Disciplinary Rules 6–101(a)(3) and 9–102(c)(4) of the Code of Professional Responsibility (79 Ill. 2d Rules 6–101(a)(3), 9–102(c)(4)). The charges arise from Mr. Cassidy's conduct with respect to the disposition of certain settlement funds. Rule 6–101(a)(3) provides, "A lawyer shall not neglect a legal matter entrusted to him." Rule 9–102(c)(4) states, "A lawyer shall promptly pay or deliver to the client as requested by a client the funds *** in the possession of the lawyer which the client is entitled to receive."

The Hearing Board recommended that the respondent be censured and in addition that he forfeit his fee to his client. The Review Board upheld the recommendation of censure but disapproved the resolution of the Hearing Board relating to the respondent's fee. For the reasons that follow, we decline to accept the recommendation that respondent be censured.

In the spring of 1976, Mr. and Mrs. Peter Churitch hired Mr. Cassidy to represent their son Michael, who was just one month shy of his 21st birthday. He had been seriously injured when an uninsured drunken driver, traveling the wrong way on U.S. Route 66, collided with the car that Michael was driving. Cassidy immediately went to work making claims against State Farm Insurance Company, which was Peter Churitch's health insurer, and Allstate Insurance Company, the insurer of the vehicle

Michael was driving. In addition, he filed a dramshop action against the two taverns that had caused the uninsured driver's intoxication.

Through negotiations, suits and threatened suits, as well as claims for arbitration, Cassidy was able to realize on his client's behalf from State Farm and Allstate a total of $17,000, which was promptly remitted to the client. Both insurance companies, however, retained a lien on all monies that might be collected by young Churitch as a result of the accident, including any settlement of the dramshop action, pursuant to a written agreement signed by Michael Churitch.

On May 20, 1977, the dramshop action was settled for $14,000, very close to the statutory limit on such actions, but still $3,000 less than the liens imposed by State Farm and Allstate. It is the handling of this money, which remained in Cassidy's trust account for over two years, that is at issue here.

Cassidy testified that his strategy with regard to this money was to try to persuade the insurance companies and a hospital and another attorney with liens against the fund to waive their liens, or in the alternative to wait until the statute of limitations had run on the companies' causes of action and then distribute the money to Michael. He did not believe that Michael had any otherwise valid legal claim to the money, and therefore could not immediately distribute it to his client. Also, he apparently did not wish to interplead the parties, because he believed his client would only lose such a battle. He eventually did, however, file an interpleader proceeding in November 1979, and fortunately for Churitch, Allstate, the principal lien claimant, defaulted and the hospital waived its claim, so that Churitch received the money, less an amount awarded to an attorney who represented Churitch in a criminal case. Whether Allstate and the hospital would have followed the same course had Cassidy, instead of pur-

suing the strategy of delay, filed the interpleader action earlier cannot be determined.

Because Cassidy did not believe his client had any right as against the lienholders to the funds he held, and was reasonable in so believing, he cannot be charged with improper delay under Disciplinary Rule 9—102 in paying to the client the funds under his control. Moreover, because Cassidy's strategy for preserving the funds for his client necessarily involved large amounts of time and patience, he cannot be charged with neglect of the case merely because its resolution did in fact take a long time. The only argument for neglect that can be drawn from the facts presented must stem from Michael Churitch's feeling that he was not kept adequately informed of his legal situation or what his attorney, Mr. Cassidy, intended to do about it. We do not believe that this argument will stand up to scrutiny either, however.

Cassidy and his investigator both testified that numerous times they explained to Michael Churitch over the telephone that the settlement funds were subject to the liens, that Cassidy would do his best, but that the money would probably go to the insurance companies. Churitch apparently had difficulty understanding or remembering these communications or any other contact with his lawyer, as he was a frequent user of drugs, in part to kill the pain from the injuries he received in the automobile accident and in part for personal recreation. He was, in fact, arrested and convicted for possession of a controlled substance during the period in question. He testified before the Hearing Board that he had never been to Cassidy's office. Yet a document bearing his signature was introduced into evidence that was notarized by Cassidy's secretary, thus casting doubt on his testimony in this regard as well as on his testimony that he never heard from Cassidy or his investigator about the liens.

The hearing and review boards found support for

their decisions in Cassidy's failure to respond in writing to the numerous inquiries made by the forgetful Michael and his parents and the fact he did not at any time explain his strategy to Michael. Instead, apparently fed up with Michael's inability to remember what he had been told regarding the liens, Cassidy testified he sometimes responded briefly over the telephone to Michael's letters or would have his investigator respond. He did not explain his strategy to his client because he felt he was not required to do so, and probably did not think it wise since Churitch could not be relied upon in his condition to keep such information confidential. We believe the Commission places undue reliance on these facts. Disciplinary Rule 6—101 does not require that letters from clients be responded to in writing.

Cassidy's conduct perhaps indicates a lack of sensitivity toward his client's mental condition and an ungracious resistance to his client's demands that the status of his claim be repeatedly explained to him, but this conduct does not rise to the level of neglect of a legal matter. Although perhaps Cassidy neglected his client's feelings, there is no clear and convincing evidence that he neglected his client's legal rights or that his representation of Churitch's interest either against any insurance carrier or lien claimant was inadequate. Moreover, Cassidy's opinion that Churitch was not entitled to receive any funds in his possession which he had not already been paid was well founded notwithstanding the ultimate resolution of the interpleader action. Censure is therefore inappropriate. An attorney's reputation is a valuable asset; it should not be besmirched for failings of etiquette.

*Complaint dismissed.*